IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

KEEZIO GROUP, LLC,
2375 Roundhill Dr.
Alamo, CA 94507

                Plaintiff,

    v.

UNITED STATES CONSUMER PRODUCT
SAFETY COMMISSION,
4330 East West Highway
Bethesda, Maryland 20814-4408

PETER A. FELDMAN in his official capacity
as Acting Chairman of the Consumer Product
Safety Commission,
4330 East West Highway
Bethesda, Maryland 20814-4408

and JENNIFER SULTAN in her official
capacity as Acting Director of the Office of
Compliance and Filed Operations for the
Consumer Product Safety Commission,
4330 East West Highway
Bethesda, Maryland 20814-4408

                Defendants.

Civil Action No.   8:25-cv-01389

**COMPLAINT FOR VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT;
ARBITRARY AND CAPARICIOUS ACTION**

**INTRODUCTION**

1.     This action is brought to compel the United States Consumer Product Safety Commission

(the "CPSC") to retract its false, misleading and inaccurate March 6, 2025, unilateral press release

(the "Press Release") warning consumers to immediately stop using over 108,000 units of Plaintiff

Keezio Group, LLC's ("Keezio") play yard mattresses due to the risk of serious injury or death.

2.      In addition to issuing the false, misleading and inaccurate Press Release on March 6, 2025, one day earlier, March 5, 2025, the CPSC's Division of Regulatory Enforcement sent an e-mail to Amazon.com, Inc. ("Amazon," the e-commerce platform that facilitated Keezio's sales of its play yards) requesting that Amazon send the Press Release to all known customers who purchased the subject products on Amazon.com, and to send a copy of Amazon's customer notice to the "RegulatoryEnforcement@cpsc.gov" e-mail address on for verification by the CPSC of the date of such notices.

3.      This action is also brought to compel the CPSC to retract the Press Release and to publish the retraction in a manner equivalent to that in which publication of the Press Release was made, including a request to Amazon to send the retraction to each customer to whom Amazon sent the Press Release.

4.      Keezio seeks declaratory relief (28 U.S.C. §§ 2201, 2202; 5 U.S.C. § 706) against the Defendants for its issuing the false, misleading and inaccurate Press Release; for sending a pre-publication demand to Amazon regarding the Press Release; and for failing to retract the inaccurate and misleading Press Release.

5.      The Defendants' publication of the Press Release violates Section 6(b) of the Consumer Product Safety Act ("CPSA") (15 U.S.C. § 2055(b), 16 C.F.R. § 1101.1-1101.52); is not authorized by the CPSA (5 U.S.C. § 706(2)(A)); exceeds statutory authority (5 U.S.C. § 706(2)(C)); failed to follow procedure (5 U.S.C. § 706(2)(D)); and is arbitrary and capricious (5 U.S.C. § 706(2)(A)).

6.      Keezio is entitled to recover its reasonable attorneys' fees and costs (28 U.S.C. § 2412, 42 U.S.C. § 1988).

7.     The Defendants have waived sovereign immunity to this action under 5 U.S.C. § 702.

## PARTIES

8.     Keezio is a California corporation with a principal place of business in Alamo, California. Keezio is primarily engaged in the business of designing, manufacturing, importing and selling infant and toddler sleep products, including play yards and original equipment manufacturer ("OEM") replacement play yard mattresses under the "hiccapop" brand name. Keezio has not, since mid-2022, made "after-market mattresses for play yards" as that term is used in 16 C.F.R. §1241.

9.     Defendant U.S. Consumer Product Safety Commission is the federal agency given limited authority to regulate consumer products. Its headquarters are in Bethesda, Maryland and it has a testing facility in Rockville, Maryland.

10.     Defendant Peter A. Feldman is sued in his official capacity as Acting Chair of the CPSC. He was nominated by President Trump and began serving a seven-year term on October 5, 2018.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, review of agency action pursuant to 5 U.S.C. § 702, and redress for deprivation of civil rights pursuant to 28 U.S.C. § 1343(a)(3) against these Defendants pursuant to 28 U.S.C. § 1346.

12.     The determinations: (i) by the CPSC to issue the Press Release on March 6, 2025; (ii) by the CPSC's General Counsel's not to conduct an independent review in response to Keezio's counsel's request; and (iii) by the CPSC's Commissioners not to hold a hearing in response to

Keezio's counsel's request, constitute a final agency action that is judicially reviewable under the Administrative Procedure Act. 5 U.S.C. §§ 704, 706.

13.    The CPSC's issuance of the Press Release on March 6, 2025, coupled with the CPSC's General Counsel's decision not to conduct an independent review and the CPSC's decision not to hold a hearing by the CPSC's Commissioners is a final agency action that is judicially reviewable under the Administrative Procedure Act. 5 U.S.C. §§ 704, 706.

14.    Keezio has exhausted administrative remedies.

15.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because: (i) Defendants are United States agencies or officers sued in their official capacities; (ii) the CPSC's headquarters and testing lab are both in this judicial district, (iii) no real property is involved, and (iv) a substantial part of the events or omissions giving rise to the Complaint occurred within this judicial district.

## FACTUAL ALLEGATIONS

### Keezio Group, LLC

16.    Keezio is a small, family-owned American company founded in 2016. Keezio is committed to making safe and affordable infant and toddler products that are innovative, easy to use and effective.

17.    Keezio has employees in California at its Alamo office, engages the services of a third-party logistics and fulfillment facility in Hayward, California, and operates a warehouse and distribution center in Franklin, Tennessee.

18.     First and foremost, Keezio makes safe products. Keezio's play yards and OEM replacement mattresses are tested to meet the CPSC's mandatory safety standards by third-party laboratories approved by the CPSC to perform such testing. Keezio imports and sells its products under the "hiccapop" brand directly to consumers on its e-commerce website (https://www.hiccapop.com/), and through the Amazon e-commerce platform.

19.     Keezio fulfills customer orders through Amazon's fulfillment centers. Keezio is fully responsible for its products, obtains insurance for its products, and responds to all customer questions, inquiries and customer service requests. Keezio is the exclusive designer, manufacturer, importer of record and seller of its products. When selling on Amazon, Keezio employs Amazon's services not as a distributer, but rather a third-party logistics provider as defined in 15 U.S.C. § 2052(b).[1] In the instant matter Keezio is the sole source of the products which are not subject to any alternative sourcing or commingling by Amazon. In addition, Keezio assumes responsibility for all customer service issues relating to packaging, handling and shipment, and customer returns, refunds, and adjustments, disclaiming Amazon's responsibility to do so and has opted out of any Amazon program that provides such services. Keezio imports and supports its own inventory of its products in its own warehouses, using Amazon's fulfillment services as needed.

20.     Keezio's reputation for making safe, innovative, high-quality and reasonably priced products has driven Keezio's sales and made it a market leader in its product category.

---

[1] <u>Common Carriers, Contract Carriers, And Freight Forwarders</u>: A common carrier, contract carrier, third-party logistics provider, or freight forwarder shall not, for purposes of this Act, be deemed to be a manufacturer, distributor, or retailer of a consumer product solely by reason of receiving or transporting a consumer product in the ordinary course of its business as such a carrier or forwarder.

21.     Keezio is among the largest, if not the largest, Amazon-native children's brand in the United States, and one of just a handful of true American brands. Started in 2016 as a father and son venture, the hiccapop brand has sold products to millions of happy families in the United States and Canada. Keezio's portfolio of premium children's products enjoys the highest average customer rating of all Amazon juvenile brands, with nearly 150,000 four and one-half stars or higher reviews.

22.     Among the products sold by Keezio is the "hiccapop" branded replacement mattress pad model HP-TPM-2" (the "OEM Replacement Mattress").

23.     Keezio has sold nearly 750,000 play yard mattresses (whether OEM replacement mattresses or after-market mattresses), most of which were 3" thick, sold prior to amendments to the product safety standard requiring a maximum 1.5" thickness. Keezio has received no reports of injuries or other safety incidents related to the thickness or fitment of its mattresses.

24.     Keezio has received no reports of injuries involving its play yard mattresses.

25.     Even with this safety record, Keezio has never pulled back from its commitment to safety and compliance with mandatory product safety requirements.

**What is a Play Yard and What is a Play Yard Mattress**

26.     A play yard is a framed enclosure that includes a floor and has mesh or fabric sided panels primarily intended to provide a play or sleeping environment for children. It may fold for storage or travel.

27.     Keezio designs, manufactures and sells play yards and OEM replacement mattresses for its play yards.

28.    Play yard mattresses and OEM replacement mattresses are generally comprised of a soft, supportive filling encased in a fabric shell.

29.    Keezio makes its play yard mattresses with a polyurethane foam insert and a jacquard cover.

~~30.~~    Polyurethane foam is inherently variable such that it may expand or compress over time depending on environmental conditions such as temperature and humidity. Thus, while Keezio's design specification for the inner fill of its play yard mattresses and OEM replacement mattresses is for a one-inch thickness (taking into account the inherent variability of polyurethane foam), the mattresses may compress or expand during shipment and storage, as the variabilities of heat, compression and time all react differently upon foam mattresses.

**The U.S. Consumer Product Safety Commission and the Regulatory Framework**

31.    The CPSA, 15 U.S.C.S. § 2051 et seq., was enacted in 1972, and established the CPSC.

32.    The CPSA was enacted to address concerns that "consumer products which present unreasonable risks of injury" were available to consumers and that the existing regulatory framework was either inadequate or burdensome to manufacturers. 15 U.S.C. § 2051(a)(1), (4), and (5).

33.    The CPSC is the federal agency charged with protecting consumers from unreasonable risks of injury from consumer products. The CPSA provides a regulatory framework for the CPSC to conduct product safety research, investigations, and testing; assist with the development of voluntary product safety standards; to promulgate mandatory consumer product safety standards;

collect, maintain, and analyze incident data; to file suit to seize imminently hazardous products; and ban hazardous products.

34.    The CPSC's purpose is: "(1) to protect the public against unreasonable risks of injury associated with consumer products; (2) to assist consumers in evaluating the comparative safety of consumer products; (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and (4) to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries." 15 U.S.C. § 2051(b).

35.    The CPSA gives the CPSC authority to develop product safety standards, to ban products under certain circumstances, and to pursue recalls of products that present a substantial product hazard. 15 U.S.C. §§ 2056, 2057, 2058.

36.    All consumer product safety determinations made by the CPSC must follow the rigorous science and data driven process set forth by federal law. The CPSC's decision to issue unilateral press releases must follow regulatory protocols that include providing companies with due process before the CPSC may issue a unilateral press release.

37.    ASTM International ("ASTM"), is an organization that develops technical standards for a wide range of materials, products, systems, and services. ASTM is a private voluntary consensus standards development organization that creates and maintains product standards using a rigorous approach to assure that standards are developed in an open, fair, and balanced system with input from all stakeholders. ASTM Committee F15 on Consumer Products was established in 1973 at the request of CPSC.

38.    Children's products, such as those sold by Keezio, are subject to mandatory safety standards and enforcement by CPSC. 15 U.S.C. § 2051.

39.    Before children's products may be imported and sold in the United States, several requirements must be satisfied. 15 U.S.C. § 2051.

40.    Under the CPSA, as amended by the Consumer Product Safety Improvement Act of 2008 (CPSIA), manufacturers and retailers of consumer products, including children's products, must understand what safety standards apply to their products. Children's products must be tested by a third-party laboratory approved by CPSC to conduct testing. 15 U.S.C. § 2051.

41.    The "importer of record" must obtain third-party testing to certify compliance with all mandatory safety standards. 15 U.S.C. § 2051.

42.    To facilitate testing, "manufacturers" – a statutorily defined term that includes "any person who imports a consumer product" – must have their children's products tested by an accredited third-party laboratory and certify that the product complies with all appliable rules, bans, standards, and regulations. 15 U.S.C. § 2063(a)(2); 16 C.F.R. part 1110.

43.    The "Children's Product Certificate," 16 C.F.R. 1110.7(a), must be made available to the CPSC as soon as the product or shipment is available for inspection in the United States. 16 C.F.R. 1110.7(c).

44.    Federal law makes it illegal to: (i) sell, offer for sale, manufacture for sale, distribute in commerce, or import a consumer product that does not meet an applicable mandatory safety standard; (ii) fail or refuse to provide CPSC access to applicable records; (iii) fail to provide CPSC

a certificate of compliance upon request; (iv) issue a false or misleading certificate of compliance; and (v) make material misrepresentations to CPSC. 15 U.S.C. § 2068 (Prohibited Acts).

45.    Keezio met all such obligations for its products with annual testing of its products by such third-party independent CPSC accredited laboratories.

**Regulatory Requirements for Play Yards and Replacement Pads**

46.    Play yards must comply with the product safety regulations set forth in 16 C.F.R. § 1221. On March 6, 2025 (the Press Release publication date), 16 C.F.R. § 1221 incorporated by reference the voluntary product safety standard F406-19 promulgated by ASTM (subject to specified exceptions not relevant here).[2]

47.    ASTM F-406-19 § 1.1 sets the scope of the safety standard, and expressly applies to play yards, including mesh/fabric assemblies.

48.    ASTM F-406-19 § 3.1.17 defines a mesh/fabric unit.

49.    ASTM F-406-19 § 5.16.2 provides that the filling material for a play yard mattress (whether included with the play yard, an OEM replacement mattress or an after-market mattress) not exceed one inch in thickness. The standard further provides that the total thickness of the mattress including all fabric or vinyl layers, filling material and any structural members not exceed 1½ inches in thickness.

50.    After-market mattresses intended for use in play yards that are not OEM must comply with the product safety regulations set forth in 16 C.F.R. § 1241, which incorporates by reference

---

[2] On April 5, 2025, 16 C.F.R. § 1221 was updated to replace ASTM F406-19 (the 2019 version) with F406-24 (the 2024 version). The change is not material as it relates to this action.

ASTM's voluntary product safety standard F2933-21, but with certain exceptions listed in the regulation.

51.     16 C.F.R. § 1241 requires after-market play yard mattresses be at least the same size as the original equipment mattress or larger and lay flat on the floor of the play yard, in contact with the play yard mattress support structure.

## CPSC Testing, Tolerance and Enforcement

52.     Upon information and belief, as part of its protocol when testing play yard mattresses and OEM replacement mattresses, the CPSC allows for a variation in the maximum thickness of mattresses. Accordingly, absent other violations and provided the maximum thickness of the mattress (including its covering) does not exceed 1.5", play yard and OEM replacement mattresses up to 1¼" thick (excluding its covering) where there is some variability in the thickness of the foam are not ordinarily cited by the CPSC for a violation of the mandatory safety standard set forth in 16 C.F.R. §1221.

53.     Keezio has requested information from the CPSC regarding its testing protocol and thickness variation tolerance, but the CPSC has not provided to Keezio the test protocol or disclosed the CPSC's allowable variance.

54.     Upon information and belief, when play yard mattresses and OEM replacement mattresses are found by the CPSC to exceed the maximum thickness set forth in 16 C.F.R. §1221 despite having reasonably expected variability in the thickness of the fill, the CPSC will typically request that the manufacturer correct its future production.

**Regulatory Procedures for CPSC Warnings to Consumers**

55.    The CPSA dictates how the CPSC, the individual commissioners, and CPSC staff may publicly discuss consumer products. See 15 U.S.C. § 2055.

56.    No less than 15 days prior to public disclosure of any information, where the identity of the manufacturer is readily ascertainable, the CPSC must notify the manufacturer and provide a summary of the information to be disclosed and must provide the manufacturer with a reasonable opportunity to submit comments to the CPSC. 15 U.S.C. § 2055(b)(1).

57.    A manufacturer is "readily ascertainable," requiring notice before disclosure, "when a reasonable person receiving the information in the form in which it is to be disclosed and lacking specialized expertise can readily ascertain from the information itself the identity of the manufacturer or private labeler of a particular product." 16 C.F.R. § 1101.13.

58.    Before publicly disclosing information "from which the identity of such manufacturer … may be readily ascertained," the CPSC must "take reasonable steps to assure" that the disclosure is: (i) accurate; (ii) fair in the circumstances; and (iii) reasonably related to effectuating the purposes of the Consumer Product Safety Act. 15 U.S.C. § 2055(b)(1).

59.    In other words, if the CPSC is going to disclose to the public information that would enable an average person to identify the manufacturer, the CPSC must provide that manufacturer with notice and opportunity to comment on the proposed disclosure. Then the CPSC must include in the disclosure any comments or other information provided by the manufacturer in response to the information. Id.

60.     If the CPSC is going to disclose to the public information that reflects on the safety of a specific consumer product or a class of consumer products, then the CPSC has an obligation to make sure that the information is not inaccurate or misleading regardless of whether the identity of the manufacturer is easily identifiable. 15 U.S.C. § 2055(b)(6).

61.     The disclosure responsibilities under the CPSA apply to both the CPSC, individual CPSC Commissioners, and CPSC employees, agents, and representatives. The public disclosure procedure "shall apply whenever information is to be disclosed by the [CPSC], any member of the [CPSC], or any employee, agent, or representative of the Commission in an official capacity." 15 U.S.C. § 2055(d)(2).

62.     A retraction can be requested for statements made by the CPSC. "Any manufacturer, distributor or retailer of a consumer product or any other person may request a retraction if he/she believes the [CPSC] or an individual member, employee, agent, contractor or representative of the [CPSC] has made public disclosure of inaccurate or misleading information, which reflects adversely either on the safety of a product with which the firm deals or on the practices of the firm." 16 C.F.R. § 1101.52(b).

63.     "If the [CPSC] finds that, in the administration of the Act, it has made public disclosure of inaccurate or misleading information which reflects adversely upon the safety of any consumer product or class of consumer products, or the practices of any manufacturer, private labeler, distributor, or retailer of consumer products, it shall, in a manner equivalent to that in which such disclosure was made, take reasonable steps to publish a retraction of such inaccurate or misleading information." 15 U.S.C. § 2055(b)(7).

64.    Upon information and belief, only in circumstances where the company does not respond to a CPSC Notice of Violation or otherwise fails to engage with the CPSC, will the CPSC issue a Stop Sale order to the manufacturer and/or retailer. This generally happens when the manufacturer has no presence in the U.S.

65.    Upon information and belief, when the manufacturer responds to a Notice of Violation and engages with the CPSC regarding a purported violation, it is exceedingly unusual for the CPSC to issue a Notice of Violation with a demand to the manufacturer and/or retailer to recall the product, followed by a unilateral press release to consumers.

**Events Leading to the Unilateral Press Release**

66.    On November 18, 2024, the CPSC issued a Notice of Violation to Keezio asserting that the CPSC had obtained Keezio products from Amazon, that the CPSC tested the product identified as the "hiccapop Pack and Play Mattress Pad Model HP-TPM-2" (the OEM Replacement Mattress) and determined that "[t]he crib mattress fails to comply with one or more sections of … 16 C.F.R. part 1241."

67.    The CPSC erred in applying the product safety standards set forth in 16 C.F.R. § 1241 to Keezio's OEM Replacement Mattress. The CPSC should instead have applied the product safety standards set forth in 16 C.F.R. § 1221 to the OEM Replacement Mattress.

68.    The test summary accompanying the Notice of Violation refers to the "crib mattress" tested by the CPSC and includes a photograph showing that the sample tested was manufactured in May 2024 ("mfg. date 05/24"). Despite repeated requests for the full test report and test protocol, the CPSC has refused to provide it.

- 14 -

69.    Keezio manufactured 13,944 OEM Replacement Mattresses in May 2024.

70.    The Notice of Violation directed Keezio to stop sale of the "crib mattresses" (the OEM Replacement Mattresses).

71.    The CPSC erred in not specifying that the stop sale should apply only to the May 2024 production of Keezio's OEM Replacement Mattress.

72.    The test report described the OEM Replacement Mattress as an "After-Market Mattress for Play Yard & Bassinet." It found that the OEM Replacement Mattress: (i) had a thickness of 1.38 inches (*i.e.*, several one-hundredths of an inch thicker than what, upon information and belief, the CPSC generally allows without issuing a Notice of Violation); (ii) did not meet the warning requirements for play yards and non-full-size crib mattresses; (iii) did not meet the warning design requirements for retail packages; and (iv) did not meet the requirements for warning statements and instruction literature.

73.    The last three violations identified in the test report do not apply to Keezio's OEM Replacement Mattresses and should not have been found to be violations.

74.    Keezio, through counsel, responded to the CPSC's Notice of Violation by contacting Joseph Williams ("Williams"), a Senior Compliance Officer with CPSC's Office of Compliance and Field Operations and the person who signed the Notice of Violation.

75.    Upon information and belief, the CPSC did not have the HP-TRAVELPOD-DPM play yard (the "DPM Play Yard") to use when testing the May 2024 OEM Replacement Mattress that the CPSC had obtained from Amazon.

76.     The mandatory product safety standard testing protocol for fitment requires placing the included mattress (identical to the OEM Replacement Mattress) into the play yard for which its use is intended (which is stated on the OEM Replacement Mattress' permanent sewn in label), and then measuring the gap between the perimeter of the mattress and the interior wall of the play yard. Thus, without the play yard for which the OEM Replacement Mattress is intended to be used, it is not possible to test the OEM Replacement Mattress pursuant to the mandatory standard.

77.     The Notice of Violation identifies the May 2024 OEM Replacement Mattress (Model HP-TPM-2) but does not identify the DPM Play Yard with which the May 2024 OEM Replacement Mattress was required by the mandatory product safety standard to be used as the testing platform for the OEM Replacement Mattress.

78.     In December 2024, to provide the CPSC with the necessary materials and information to test the May 2024 OEM Replacement Mattress to the correct mandatory standard set forth in C.F.R. § 1221 (not § 1241), Keezio sent to the CPSC the following items:

A.  a DPM Play Yard so the CPSC could test the May 2024 OEM Replacement Mattress already in its possession;

B.  a Keezio play yard HP-TRAVELPOD (the "v2 play yard") including a Keezio mattress designed specifically for use with a new "enclosed zippered pocket" for the v2 play yard, but was not yet available for consumer purchase on any retail platform; and

C.  A *prototype* play yard mattress *not* intended for use with either the DPM Play Yard or the v2 play yard but sent as a demonstrative because it incorporated a shell material not previously used by Keezio.

79.     On January 13, 2025, the CPSC issued to Keezio a Results of Sample Analysis Report for Keezio's HP-TRAVELPOD-DPM play yard (*i.e.*, the DPM Play Yard). This report states that "Limited testing did not identify performance violations. See test report." Thus, based upon the

CPSC's testing, the CPSC determined that the DPM Play Yard complied with the mandatory product safety standards. But again, the CPSC applied the incorrect product safety standard (16 C.F.R. § 1241 and ASTM F-2933-21).

80.     Upon information and belief, and even though Keezio had provided the CPSC with a DPM Play Yard to be tested for fitment using the May 2024 OEM Replacement Mattress, the CPSC tested the DPM Play Yard with the *prototype* mattress.

81.     Upon information and belief, the CPSC also tested the May 2024 OEM Replacement Mattress using the v2 play yard (not the DPM Play Yard), disregarding that the OEM Replacement Mattress was clearly labeled for use with the DPM Play Yard. The CPSC's retest found that the May 2024 OEM Replacement Mattress, which was not designed for use with the v2 play yard, did not fit the v2 play yard.

82.     Upon information and belief, the CPSC did not test the May 2024 OEM Replacement Mattress for fitment with the DPM Play Yard. Instead, upon information and belief, the CPSC: (i) compared the measurements of the May 2024 OEM Replacement Mattress to the *prototype* mattress provided by Keezio; (ii) determined that the May 2024 OEM Replacement Mattress was 1½" shorter in length than the *prototype* mattress; (iii) determined that it did not fit the DPM Play Yard; and (iv) issued a second failing report for the May 2024 OEM Replacement Mattress.

83.     Upon receipt of the January 13, 2025, failed test reports, Keezio sent several videos to the CPSC demonstrating proper fitment of the May 2024 OEM Replacement Mattresses when placed in the DPM Play Yard.

84.    Upon information and belief, the CPSC did not consider these videos, and on January 13, 2025, issued to Keezio an Amended Notice of Violation, repeating that the CPSC had obtained Keezio products from Amazon, and directing Keezio to "Recall" the hiccapop "<u>crib mattress.</u>"

85.    The Amended Notice of Violation also states that the CPSC tested the "hiccapop Play Yard" (*i.e.*, the v2 play yard that was not yet available to consumers) and that the "play yard fails to comply with one or more sections of ASTM F406, 16 C.F.R. § 1221.2."

86.    The Amended Notice of Violation further directs Keezio to stop sale of the "play yard" (even though the v2 play yard had not yet been offered for sale).

87.    On March 5, 2025, at 1:43 p.m. ET, the CPSC's Division of Regulatory Enforcement sent its e-mail to Amazon advising that the CPSC would issue a unilateral news release regarding Keezio's OEM Replacement Mattress the next day. The CPSC did not notify Keezio of the e-mail to Amazon.

88.    The CPSC requested that Amazon send the Press Release to all known customers who purchased *any* OEM Replacement Mattress(es) on Amazon.com (*i.e.*, not limited to the May 2024 production).

89.    On March 5, 2025, at 2:08 p.m. ET, Williams wrote to Keezio's attorney to inform Keezio that the CPSC would issue the Press Release on March 6.

90.    In his e-mail, Williams claimed that the CPSC was not obligated to provide any opportunity for review and response by Keezio under Section 6(b)(4) of the CPSA (15 U.S.C. § 2055(b)(4)).

91.    Upon information and belief, Williams' position, that the CPSC was not obligated to provide any opportunity for review and response by Keezio under section 6(b)(4) of the CPSA, was premised upon the portion of section 6(b)(4) relating to a product for which the CPSC "has reasonable cause to believe is in violation of any consumer product safety rule or provision of [the CPSA] ...."

92.    Assuming, *arguendo*, that Keezio's May 2024 production of OEM Replacement Mattresses did not comply with the applicable standard (and Keezio does not concede this), Williams' position is wrong at least as to all other Keezio OEM Replacement Mattresses, *i.e.*, those not a part of the May 2024 production.

93.    Keezio's attorney responded on March 6, 2025, at 1:23 a.m. ET, writing that Keezio had been denied due process, that the Press Release would impugn the reputation and goodwill of Keezio (a U.S. company), and that Williams' assertion that the CPSC was not required to provide Keezio with an opportunity to review and respond to the Press Release prior to publication would have the effect of a product ban when the CPSC knew that Keezio disputed the facts that purportedly were the basis for the Press Release.

94.    Keezio's attorney requested independent review by the CPSC's General Counsel and, failing that, further requested a hearing before the Commission.

95.    The CPSC did not respond to Keezio's attorney's request for review.

96.    The CPSC's Office of the General Counsel has an independent obligation to assure that no release is unilaterally issued that is any way false, misleading or unfair in consideration of the

totality of the record before it. Pursuant to CPSA § 27(b)(9), the CPSC delegates to the General Counsel or his or her senior staff designees, the authority to independently render decisions.

97.    When there is no CPSC determination of substantial or imminent hazard or an alleged violation is disputed on a record before it, issuance of such unilateral press release is unwarranted. When such proposed action is undertaken under imprimatur of the CPSC, the obligation to refrain from harmful action is substantial.

98.    The Regulatory Enforcement Division's publication of the Press Release in the name of the CPSC, without the required review and/or a requested hearing was a clear abuse of discretion, inconsistent with the Administrative Procedure Act (5 U.S.C. § 706(2)(A), the "APA"), arbitrary and capricious conduct in contravention of the APA and ultra vires in exceeding its statutory authority in transgression of the APA § 706(2)(C).

99.    There was no statutory basis for the CPSC's threatened publication of the Press Release without first giving Keezio an opportunity to comment and the requested due process. Publication was a *de facto* ban by press release in lieu of due process.

100.    Upon information and belief, publication of the Press Release was made without a vote by the CPSC's Commissioners.

101.    Williams and the CPSC did not consider Keezio's counsel's protest of the intended publication and proceeded to publish the Press Release on March 6, 2025.

102.    The Press Release told consumers to immediately stop using Keezio's OEM Replacement Mattresses due to a risk of "Serious Injury or Death from Entrapment or Suffocations."

**Amazon's Response to the Press Release**

103.    In response to the CPSC's March 5, 2025, e-mail instruction to Amazon, upon the CPSC's publication of the Press Release, Amazon forwarded the Press Release to approximately 108,000 consumers who had purchased Keezio's OEM Replacement Mattresses through the Amazon e-commerce platform.

104.    Amazon took the additional and reasonably anticipated step of offering consumers a refund of the purchase price paid for the Keezio OEM replacement pad where the Press Release was otherwise silent as to any available customer remedies. Consumers to whom Amazon forwarded the Press Release could receive a refund by responding to Amazon's message and checking a box to acknowledge they had disposed and/or discontinued use of the OEM Replacement Mattress.

105.    It was reasonably foreseeable to the CPSC that, following publication by the CPSC of the Press Release, Amazon would offer refunds to consumers.

106.    Upon information and belief, the CPSC has previously been advised by Amazon of its reservation of rights to issue safety messaging and refunds on behalf of its selling partners in these circumstances, and the CPSC is aware that Amazon issues refunds.

107.    Upon information and belief, it is Amazon's policy to offer refunds to consumers when the CPSC issues a unilateral press release instructing consumers to stop using a product due to the risk of serious injury or death, contacts Amazon about dissemination of the press release, and where the unilateral press release does not otherwise offer or identify a remedy for consumers.

108.    Upon information and belief, the CPSC was aware of Amazon's policy to offer refunds to consumers in such circumstances. The CPSC often contacts Amazon in advance of issuing a

unilateral press release to request Amazon to forward the unilateral press release to consumers of the product that is the subject of the unilateral press release.

109.    Upon information and belief, it is Amazon's policy to offer refunds to consumers when the CPSC issues a unilateral press release instructing purchasers to stop using a product due to the risk of serious injury or death.

110.    Upon information and belief, the CPSC was aware of Amazon's policy to offer refunds to consumers in such circumstances.

111.    When a manufacturer works with the CPSC to recall a product, a component of the recall is a corrective action plan (a "CAP"), which must be approved by the CPSC. Typically, when a recall provides for a refund or replacement product, the CAP will require consumers to render the product inoperable or unusable. This is intended to prevent consumers from obtaining a refund or replacement product while continuing to use the product determined by the CPSC to be dangerous.

112.    Here, the CPSC's Press Release caused Amazon to offer refunds to consumers without obtaining evidence – other than a check the box – from those consumers that they had destroyed and disposed of the mattresses in order to receive the refund. As a result, it is likely that many consumers may still be using the OEM Replacement Mattresses that the CPSC claims may cause serious injuries or even death.

113.    Keezio has received many comments from consumers who purchased the OEM Replacement Mattresses that it perfectly fits their play yards.

## FIRST CAUSE OF ACTION
**(Violation of The Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary and Capricious Agency Action)**

114.    Keezio incorporates by reference all the proceeding allegations as though restated herein.

115.    Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or is "in excess of statutory . . . authority[] or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

116.    The CPSC's publication of the Press Release, abrogating Keezio's due process rights, is a final agency action under the APA.

117.    The CPSA, and in particular §6(b), provides the framework for whether, and if so when, the CPSC may issue a unilateral press release.

118.    Any CPSC-issued unilateral press release must not be false, misleading and/or inaccurate.

119.    Moreover, the decision by the CPSC to publish a unilateral press release must not be arbitrary and capricious. This is especially so when the target of the press release is not afforded due process in connection with the contested violation.

120.    Both the Notice of Violation and the Amended Notice of Violation erroneously applied to the OEM Replacement Mattresses the mandatory safety standard under 16 C.F.R. § 1241. The OEM Replacement Mattresses are subject to the mandatory safety standard set forth in 16 C.F.R. § 1221, not 16 C.F.R. § 1241.

121.    Moreover, both the Notice of Violation and the Amended Notice of Violation make clear that CPSC tested only the May 2024 production lot of the OEM Replacement Mattresses. The May

2024 production run comprised a total of 13,944 units. But the Press Release was not limited in scope to the May 2024 production. Instead, the Press Release announced that the risk of serious injury or death from entrapment or suffocation applied far beyond the May 2024 production, to 108,000 units of the OEM Replacement Mattresses without any supporting record upon which the alleged violation was based.

122.    The power to make a final determination as to whether a violation has occurred and whether to pursue enforcement rests with the Commission itself, not its Compliance Office which lacks authority to issue binding decisions on behalf of the agency (15 U.S.C. §§ 1274(a)–(b), 2064(c)–(d)). Nor does any statute, regulation, or Handbook[3] language require the Commission to follow the recommendation of its Compliance Office.

123.    The Press Release was a final agency action regardless of the basis for its authorization.

124.    The Press Release caused Amazon to offer refunds to customers who purchased OEM Replacement Mattresses. In turn, Amazon has charged the cost of the customer refunds back to Keezio.

125.    As of the date of this complaint, nearly 34,000 customers have received refunds, totaling approximately $1,200,000. This is far more than the total number of customers who purchased the OEM Replacement Mattresses from the May 2024 production.

126.    Since publication of the Press Release by the CPSC and transmittal of the Press Release by Amazon to customers at the CPSC's request, customers have requested refunds daily. Keezio anticipates that many more customers will seek refunds if the CPSC does not issue a retraction of

---

[3] The CPSC's Product Safety Planning, Reporting, and Recall Handbook, available on the CPSC's website.

the Press Release and instruct Amazon to forward the retraction to customers and stop issuing refunds.

127.    Moreover, immediately following the Press Release, Amazon removed Keezio's listing for its OEM Replacement Mattresses regardless of the production date. Keezio has lost sales of all OEM Replacement Mattresses regardless of the production date, including new production, even though the CPSC has not tested any Keezio OEM Replacement Mattress production lots other than the May 2024 production lot.

## SECOND CAUSE OF ACTION
**(Unlawful Agency Action Under the Administrative Procedure Act Based Upon CPSC's Violation of the Fifth Amendment to the United States Constitution and Violation of 42 U.S.C. § 1983)**

128.    Keezio incorporates by reference all the proceeding allegations as though restated herein.

129.    The CPSC has denied Keezio its due process rights, has unlawfully stopped the sale of all Keezio OEM Replacement Mattresses regardless of production date, and has caused Keezio to refund to customers the purchase price of the OEM Replacement Mattresses regardless of production date.

130.    The CPSC has caused injury to Keezio without due process of law and based on its past pattern and practice of conduct, and upon information and belief, the CPSC will continue to cause this injury to Keezio in the future.

131.    Keezio has been damaged by the CPSC's violations of Keezio's constitutional right to due process of law and will suffer irreparable injury absent and order by this Court directing the CPSC to issue a retraction of the Press Release.

## PRAYER FOR RELIEF

WHEREFORE, Keezio requests the entry of an Order with this relief:

      A.     Order Defendants to issue a retraction of the Press Release pursuant to 15 U.S.C. §2055(b)(7) to correct the inaccurate, misleading and false information presented in the Press Release;

      B.     A finding that Keezio's constitutional right to due process was violated;

      C.     Award to Keezio its reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

      D.     Award to Keezio its damages, costs and reasonable attorney's fees in pursuing this action under the Equal Access to Justice Act (28 U.S.C. § 2412) and under such other authorities that may authorize this relief; and

      E.     Any further relief this Court deems just and proper.


Dated: May 1, 2025

WITHERUP ALLEN LAW LLC

By:  /s/ *Margaret M. Witherup*
Margaret M. Witherup (Bar No. 23730)
Max O'Grady (Bar No. 31446)
3915 National Drive, Suite 320
Burtonsville, MD 20866
301-861-0202
mwitherup@witherupallenlaw.com
mogrady@witherupallenlaw.com

Attorneys for Plaintiff
Keezio Group, LLC