# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Keezio Group, LLC, | |
| Plaintiff, | |
| v. | Case No. 8:25-cv-01389-MJM |
| U.S. Consumer Product Safety Commission, *et al.*, | |
| Defendants. | |

## Memorandum in Support of Defendants' Motion to Dismiss

OF COUNSEL

MATTHEW A. CAMPBELL
General Counsel

MELISSA V. HAMPSHIRE
Assistant General Counsel

AMY S. COLVIN
HILDA GARCIA CONCEPCION
Attorneys
U.S. Consumer Product Safety
  Commission
Bethesda, Maryland 20814

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
  General
Civil Division

LISA K. HSIAO
Acting Director

JAMES W. HARLOW
Acting Assistant Director

DAVID H. HIXSON
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    I.    Legal background ................................................................................. 2

        A.    CPSC's authority to publicly disclose information about consumer products ........................................................................................... 2

        B.    CPSC's safety standards for play yards and play yard mattresses ................. 3

    II.    Factual background ............................................................................. 4

        A.    CPSC tests Keezio's play yard mattresses ......................................... 4

        B.    CPSC issues the Press Release to warn consumers .................................. 6

    III.  This lawsuit .................................................................................... 7

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ..................................................................................................................... 8

    I.    The Court lacks subject-matter matter jurisdiction because the Press Release is not "final agency action" ....................................................................... 8

        A.    The Press Release is not "agency action" ......................................... 9

        B.    The Press Release is not "final agency action" ................................. 11

            1.    CPSC's decisionmaking process has not concluded ............................... 12

            2.    The Press Release imposes no direct, legal consequences ...................... 14

            3.    Keezio cannot manufacture a final agency action .................................. 15

    II.    Count II also does not plausibly allege a due process violation ........................... 16

CONCLUSION ................................................................................................................. 19

TABLE OF AUTHORITIES

**Cases**

*Aerosource, Inc. v. Slater,*
　142 F.3d 572 (3d Cir. 1998) ...................................................................... 11

*Amoco Prod. Co. v. Watson,*
　410 F.3d 722 (D.C. Cir. 2005) ................................................................... 10

*Arrow Reliance, Inc. v. Califf,*
　No. 2:22-cv-1057, 2022 WL 3104102 (W.D. Wash. Aug. 4, 2022) ...................... 9

*Arrow Reliance, Inc. v. Califf,*
　No. 2:22-cv-1057, 2022 WL 18027595 (W.D. Wash. Dec. 30, 2022) ............ 11, 13

*Asbestec Constr. Servs., Inc. v. EPA,*
　849 F.2d 765 (2d Cir. 1988) ...................................................................... 18

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ................................................................................... 8

*Barclays Bank PLC v. Franchise Tax Bd. of Cal.,*
　512 U.S. 298 (1994) ................................................................................. 14

*Barry v. U.S. SEC,*
　No. 10-cv-4071-CBA, 2012 WL 760456 (E.D.N.Y. Mar. 7, 2012) ................. 9, 12

*Beck v. McDonald,*
　848 F.3d 262 (4th Cir. 2017) ....................................................................... 8

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ................................................................................... 8

*Bennett v. Spear,*
　520 U.S. 154 (1997) ....................................................................... 11, 14, 15

*Borg-Warner Protective Servs. Corp. v. EEOC,*
　245 F.3d 831 (D.C. Cir. 2001) ................................................................... 16

*Brownback v. King,*
　592 U.S. 209 (2021) ................................................................................... 8

*Chemours Co. FC, LLC v. EPA,*
　109 F.4th 179 (3d Cir. 2024) ..................................................................... 11

*City of N.Y. v. U.S. Dep't of Def.,*
　913 F.3d 423 (4th Cir. 2019) ............................................................. 8, 9, 15

*CPSC v. GTE Sylvania, Inc.,*
　447 U.S. 102 (1980) ................................................................................... 2

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ........................................................................................... 7

*El-Shifa Pharm. Indus. Co. v. United States,*
    No. 01-cv-731-RWR, 2007 WL 950082 (D.D.C. Mar. 28, 2007) ...................... 10

*Evans v. Chalmers,*
    703 F.3d 636 (4th Cir. 2012) ............................................................................. 17

*Finnbin LLC v. CPSC,*
    45 F.4th 127 (D.C. Cir. 2022) .............................................................................. 3

*Flue-Cured Tobacco Coop. v. EPA,*
    313 F.3d 852 (4th Cir. 2002) ........................................................... 11, 12, 14, 15

*FTC v. Standard Oil Co. of Cal.,*
    449 U.S. 232 (1980) ........................................................................................... 16

*Georator Corp. v. EEOC,*
    592 F.2d 765 (4th Cir. 1979) ............................................................................. 16

*Gen. Elec. Co. v. Jackson,*
    610 F.3d 110 (D.C. Cir. 2010) ........................................................................... 18

*Goines v. Valley Cmty. Servs. Bd.,*
    822 F.3d 159 (4th Cir. 2016) ............................................................................... 8

*Golden & Zimmerman, L.L.C. v. Domenech,*
    599 F.3d 426 (4th Cir. 2010) ........................................................... 9, 11, 14, 15

*Guerrero v. Clinton,*
    157 F.3d 1190 (9th Cir. 1998) ........................................................................... 12

*Hearst Radio v. FCC,*
    167 F.2d 225 (D.C. Cir. 1948) ............................................................................. 9

*Holistic Candlers & Consumers Ass'n v. FDA,*
    664 F.3d 940 (D.C. Cir. 2012) ..................................................................... 11, 14

*Hoxsey v. Folsom,*
    155 F. Supp. 376 (D.D.C. 1957) ........................................................................ 10

*Indus. Safety Equip. Ass'n v. EPA,*
    837 F.2d 1115 (D.C. Cir. 1988) ................................................................... 10, 18

*Int'l Tel. & Tel. Corp. v. Loc. 134, Int'l Bhd. of Elec. Workers,*
    419 U.S. 428 (1975) ........................................................................................... 10

*Invention Submission Corp. v. Rogan,*
    357 F.3d 452 (4th Cir. 2004) ............................................... 11, 12, 13, 14, 15

*Jake's Fireworks Inc. v. CPSC,*
    105 F.4th 627 (4th Cir. 2024) ............................................... 5, 12, 13, 14, 16

*Joshi v. Nat'l Transp. Safety Bd.*,
　791 F.3d 8 (D.C. Cir. 2015)...................................................................11

*Lovern v. Edwards*,
　190 F.3d 648 (4th Cir. 1999).............................................................8, 16

*Lujan v. Nat'l Wildlife Fed'n*,
　497 U.S. 871 (1990)...............................................................................11

*Mallinckrodt Inc. v. FDA*,
　No. 8:14-cv-03607-DKC, 2015 WL 13091366 (D. Md. July 29, 2015) ..............18

*NAACP v. Bureau of the Census*,
　945 F.3d 183 (4th Cir. 2019)................................................................14

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*,
　990 F.3d 834 (4th Cir. 2021).............................................................8, 9

*Norton v. S. Utah Wilderness All.*,
　542 U.S. 55 (2004)...................................................................................9

*O'Donnell v. Barry*,
　148 F.3d 1126 (D.C. Cir. 1998).............................................................18

*Orton Motor, Inc. v. HHS*,
　884 F.3d 1205 (D.C. Cir. 2018).............................................................19

*Paul v. Davis*,
　424 U.S. 693 (1976)...............................................................................17

*Pharm. Mfrs. Ass'n v. Kennedy*,
　471 F. Supp. 1224 (D. Md. 1979).........................................................10

*Reliable Automatic Sprinkler Co. v. CPSC*,
　324 F.3d 726 (D.C. Cir. 2003).........................................................13, 15

*Sadallah v. City of Utica*,
　383 F.3d 34 (2d Cir. 2004)....................................................................18

*Shirvinski v. U.S. Coast Guard*,
　673 F.3d 308 (4th Cir. 2012)................................................................17

*Siegert v. Gilley*,
　500 U.S. 226 (1991)...............................................................................17

*Soundboard Ass'n v. FTC*,
　888 F.3d 1261 (D.C. Cir. 2018).........................................................12, 13

*Stenson Tamaddon, LLC v. U.S. Internal Revenue Serv.*,
　742 F. Supp. 3d 966 (D. Ariz. 2024)......................................................12

*Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*,
　420 F.3d 322 (4th Cir. 2005)................................................................17

*Trudeau v. FTC,*
    384 F. Supp. 2d 281 (D.D.C. 2005) ........................................................... 11

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) .................................................................................... 11

*WMX Techs., Inc. v. Miller,*
    197 F.3d 367 (9th Cir. 1999) ...................................................................... 18

**Statutes**

5 U.S.C. §
    551(4) ......................................................................................................... 10
    551(6) ......................................................................................................... 10
    551(10) ....................................................................................................... 10
    551(13) ................................................................................................ 9, 10, 11
    704 .............................................................................................................. 9

15 U.S.C. §
    2051 ............................................................................................................. 2
    2051(b)(1) .................................................................................................... 2
    2051(b)(2) .................................................................................................... 2
    2051(b)(3) .................................................................................................... 2
    2053(a) ........................................................................................................ 2
    2054(a)(1) .................................................................................................... 2
    2055 ............................................................................................................. 2
    2055(b)(4) ...................................................................................... 2, 3, 6, 16
    2055(b)(7) .................................................................................................. 10
    2055(d)(2) .................................................................................................... 2
    2056a(b)(1) .................................................................................................. 3
    2056a(b)(1)(b) ............................................................................................. 3
    2056a(b)(2) .................................................................................................. 3

42 U.S.C. § 1983 ................................................................................................ 7

**Rules and Regulations**

16 C.F.R.
    Part 1221 ..................................................................................................... 4
    Part 1241 .................................................................................................. 4, 5
    § 1101.1 ...................................................................................................... 2
    § 1101.22 .................................................................................................... 2
    § 1101.52(b) .............................................................................................. 10
    § 1101.52(d) .............................................................................................. 10
    § 1101.52(e) .............................................................................................. 10
    § 1130.2(a)(6) ............................................................................................. 3
    § 1130.2(a)(18) ........................................................................................... 3
    § 1241.1 ...................................................................................................... 3

Fed. R. Civ. P. 12(b)(1) ................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ................................................................................ 8

**Other Authorities**

87 Fed. Reg. 8,640 (Feb. 15, 2022) ............................................................. 3

90 Fed. Reg. 8,368 (Jan. 29, 2025) ............................................................. 4

ASTM International, ASTM F406-19, *Standard Consumer Safety Specification for Non-Full-Size Baby Cribs/Play Yards* (Mar. 15, 2019) ...................................... 3, 4, 5

ASTM International, ASTM F406-24, *Standard Consumer Safety Specification for Non-Full-Size Baby Cribs/Play Yards* (Aug. 1, 2024) ......................................... 4

ASTM International, ASTM F2933-21, *Standard Consumer Safety Specification for Crib Mattresses* (June 15, 2021) ............................................................... 4, 5

CPSC, *CPSC Warns Consumers to Immediately Stop Using Hiccapop Play Yard Mattresses Due to Risk of Serious Injury or Death from Entrapment or Suffocation; Violations of the Federal Regulations for Crib Mattresses* (Mar. 6, 2025), https://perma.cc/M2W9-MXHM ...................................................................... 6, 7

INTRODUCTION

Keezio Group, LLC challenges a press release issued by the U.S. Consumer Product Safety Commission ("CPSC" or "Commission") about one of Keezio's infant sleep products. Consistent with CPSC's mission to protect the public against unreasonable risks of injury from consumer products, the press release warns consumers that the thickness and dimensions of Keezio's Hiccapop Pack and Play Mattress Pad, model HP-TPM-2, could result in a gap between the mattress and the side of a play yard, sold separately, that could trap and suffocate infants. The press release does not, however, consummate the Commission's decisionmaking about the product. Nor does it require Keezio to take or refrain from taking any action, or impose any legal consequences like a product ban.

Keezio seeks to stifle this adverse publicity through the Administrative Procedure Act ("APA"), but Keezio has not met its burden of establishing this Court's subject-matter jurisdiction. The press release is not "agency action" under the APA, much less the requisite "final agency action." As numerous courts have held, an agency's non-binding public statement—like CPSC's press release—does not consummate any agency decisionmaking process or determine any rights or obligations. The Complaint should therefore be dismissed under Rule 12(b)(1).

Apart from a lack of final agency action, Count II should be dismissed because it fails to state a due process claim under the APA. Keezio alleges harm only to its business reputation, not to a legal status or right, and thus cannot establish a fundamental element of a due process violation. Accordingly, Count II should be dismissed under Rule 12(b)(6).

BACKGROUND

## I.   Legal background

### A.   CPSC's authority to publicly disclose information about consumer products

Congress established the CPSC to, among other missions, "protect the public against unreasonable risks of injury from consumer products," "assist consumers in evaluating the comparative safety of consumer products," and "develop uniform safety standards for consumer products." 15 U.S.C. §§ 2051(b)(1)–(3), 2053(a). CPSC carries out those missions by exercising various statutory authorities, including under the Consumer Product Safety Act ("CPSA"), 15 U.S.C. § 2051 *et seq.*

In the CPSA, Congress "gave the Commission broad powers to gather, analyze, and disseminate vast amounts of private information." *CPSC v. GTE Sylvania, Inc.*, 447 U.S. 102, 111 (1980). Those "powers include the authority to collect and disseminate product safety information." *Id.* at 104 (citing 15 U.S.C. § 2054(a)(1)).

Any disclosures of "information . . . by the Commission, any member of the Commission, or any employee, agent, or representative of the Commission in an official capacity" are governed by 15 U.S.C. § 2055. 15 U.S.C. § 2055(d)(2). Among other things, if a disclosure "will permit the public to ascertain readily the identity of [the] manufacturer or private labeler" of the relevant "consumer product," not less than 15 days prior to its public disclosure, CPSC generally must give the manufacturer notice and a reasonable opportunity to comment on the information to be disclosed. *Id.* § 2055(b)(1); *see* 16 C.F.R. §§ 1101.1, 1101.22. However, these advance notice-and-comment requirements "shall not apply to the public disclosure of . . . information about any consumer product . . . which the Commission has reasonable cause to believe is in violation of any consumer product safety rule or provision of this Act or similar rule or provision of any other Act enforced by the Commission." 15 U.S.C. § 2055(b)(4). Thus, when the Commission has reasonable cause to believe a consumer product

2

violates a law it administers, the Commission can, without advance notice to the manufacturer, publicly disclose information about that product. *See id.*

## B.  CPSC's safety standards for play yards and play yard mattresses

In 2008, Congress amended the CPSA to "create[] special rules" for promulgating safety standards for "'durable infant or toddler products.'" *Finnbin LLC v. CPSC*, 45 F.4th 127, 131 (D.C. Cir. 2022) (quoting 15 U.S.C. § 2056a(b)(1)). Such products include "play yards"[1] and "crib mattresses."[2] 16 C.F.R. § 1130.2(a)(6), (18). Congress empowered CPSC to adopt standards for infant or toddler products that "are more stringent than . . . voluntary standards" used by industry. 15 U.S.C. § 2056a(b)(1)(b). The ultimate goal is to ensure the standards "provide the highest level of safety for such products that is feasible." *Id.* § 2056a(b)(2).

CPSC has described the risks necessitating such high safety standards. For example, "[i]nfants can become trapped in a gap between [an ill-fitting] crib mattress and the side wall(s) of their sleep environment, with their nose and mouth pressed against the mattress or side wall, experiencing compromised airflow." 87 Fed. Reg. 8,640, 8,467 (Feb. 15, 2022). A gap between an infant's mattress and a product's side walls can be "especially hazardous . . . in products with flexible (*e.g.*, mesh or fabric) sides, such as play yards and non-rigid-sided portable cribs," because the side walls expand in ways that can increase "the risk of gap entrapment." *Id.*

CPSC's implementing regulations incorporate by reference and build upon voluntary standards published by ASTM International, an organization that develops

---

[1] A play yard (or playpen) "is a framed enclosure that includes a floor and has mesh or fabric sided panels primarily intended to provide a play or sleeping environment for children. It may fold for storage or travel." Compl. ¶ 26; ASTM 406-19 § 3.1.23.

[2] Crib mattresses include after-market mattresses for play yards and non-full size cribs, as well as full size crib mattresses and non-full size crib mattresses. 16 C.F.R. § 1241.1.

and publishes voluntary consensus technical standards for a wide range of products and materials. *See* Compl. ¶ 37. Only two parts of the regulations are relevant here. In 16 C.F.R. part 1221, CPSC established standards for play yards, incorporating ASTM F406-19, *Standard Consumer Safety Specification for Non-Full-Size Baby Cribs/Play Yards* (Mar. 15, 2019).[3] These standards require, among other things, that each play yard be sold with a mattress included and that the mattress meet certain specifications. ASTM F406-19 § 5.16.[4]

In addition, 16 C.F.R. part 1241 sets forth standards for "after-market play yard mattresses," incorporating ASTM F2933-21, *Standard Consumer Safety Specification for Crib Mattresses* (June 15, 2021). After-market mattresses are replacement mattresses sold for use in play yards, and they too are subject to specific size, labeling, and other requirements. ASTM F2933-21 §§ 3.1.1, 5. The standards distinguish after-market mattresses from so-called original equipment manufacturer (OEM) replacement mattresses. OEM replacement mattresses must be provided or sold by the play yard manufacturer and must be equivalent in dimensions and specifications to the original mattress provided with the play yard. *Id.* § 3.1.1.1.

## II.  Factual background

### A.  CPSC tests Keezio's play yard mattresses

Keezio designs, manufactures, and sells infant and toddler sleep products under the "hiccapop" brand name. Compl. ¶ 8. Among its products are play yards and

---

[3] Effective April 5, 2025, CPSC amended 16 C.F.R. part 1221 to incorporate ASTM's updated standards for play yards, set forth in ASTM F406-24, *Standard Consumer Safety Specification for Non-Full-Size Baby Cribs/Play Yards* (Aug. 1, 2024). *See* 90 Fed. Reg. 8,368, 8,374 (Jan. 29, 2025). As Keezio notes, Compl. ¶ 46 n.2, the amendment is not material to this lawsuit.

[4] A free, read-only copy of ASTM's standards is available for viewing on the ASTM website at https://www.astm.org/READINGLIBRARY/ (user account required).

4

mattresses intended for use in play yards, *id.*, which it imports and sells through its own website and Amazon's e-commerce platform, *id.* ¶ 18.

On November 18, 2024, CPSC's Office of Compliance informed Keezio that it had obtained a Keezio play yard mattress from Amazon.com, tested that sample, and determined the "mattress fails to comply with one or more sections of . . . 16 C.F.R. part 1241." *Id.* ¶ 66 (Keezio's ellipses). The accompanying test report further explained that the mattress's filling material measured 1.38 inches thick, far exceeding the 1-inch maximum applicable to both OEM replacement mattresses and after-market mattresses under ASTM F2933-21 § 5.9.1 and ASTM F409-19 § 5.16.2, respectively. Compl. ¶ 68; *see id.* ¶ 49.[5]

The testing report also described three other violations of 16 C.F.R. part 1241: (1) the mattress labels did not include required information; (2) the retail packaging did not include required information; and (3) the instructional literature did not include required information. *Id.* ¶ 72. A photograph of the tested mattress indicated that it was manufactured in May 2024. *Id.* ¶ 68. To address safety concerns related to the violations, Compliance staff requested that Keezio discontinue selling its play yard mattress as a voluntary corrective action.[6] *Id.* ¶ 70.

In December 2024, Keezio provided CPSC with two samples of its "hiccapop" play yards so the agency could retest the company's mattress. *Id.* ¶ 78. Compliance staff did so, and, on January 13, 2025, issued an amended notice. *Id.* ¶¶ 79, 84–87.

---

[5] The Complaint alleges, without citation to any source, that CPSC "allows for a variation in the maximum thickness of mattresses" and excuses mattresses with filling material up to 1.25 inches thick. Compl. ¶¶ 52–53, 72. There is no such allowance for a variation in the thickness requirement.

[6] As the Fourth Circuit has explained, Compliance staff merely "request[]" that a firm "take specific corrective action," and "[o]nly the Commission itself may vote to authorize an administrative complaint seeking to *compel* a firm to take corrective action." *Jake's Fireworks Inc. v. CPSC*, 105 F.4th 627, 631–32 (4th Cir. 2024) (emphasis added); *see id.* 633–34.

In addition to the four problems first noted in the November 2024 notice (*i.e.*, that the play yard mattress violated filling-thickness, labeling, retail packaging, and literature requirements), the amended notice identified two further issues: (1) the sample mattress CPSC obtained from Amazon was smaller than the original equipment mattress that comes with Keezio's play yard; and (2) the sample mattress did not fit Keezio's play yard. *Id.* ¶ 82. Compliance staff had found that, when placed in a Keezio play yard, the sample mattress's smaller size resulted in a gap between the mattress and the sides of the play yard, into which an infant could become trapped.[7]

Due to this increased safety risk, CPSC staff requested that Keezio recall its mattress as a voluntary corrective action. *Id.* ¶ 84. Keezio did not agree to recall the mattress or offer consumers a remedy.

## B. CPSC issues the Press Release to warn consumers

On March 5, 2025, CPSC advised Keezio's counsel that it planned to issue a press release the following day regarding Keezio's play yard mattress and attached a copy of the release. Compl. ¶ 89. Agency staff further advised that the CPSA's advance notice-and-comment procedures did not apply because, under 15 U.S.C. § 2055(b)(4), the agency had reasonable cause to believe Keezio's mattress was in violation of a consumer product safety standard or CPSA provision. *Id.* ¶¶ 90–91. Keezio's counsel responded by email at 1:23 a.m. on March 6, 2025—the day of the planned release—objecting to the press release and requesting "independent review by the CPSC's General Counsel," or, failing that, "a hearing before the Commission." *Id.* ¶ 93.

On March 6, 2025, CPSC issued the Press Release. *See id.* ¶¶ 101–02; CPSC, *CPSC Warns Consumers to Immediately Stop Using Hiccapop Play Yard Mattresses Due to Risk of*

---

[7] The Complaint alleges that, for unexplained reasons, Keezio provided CPSC with a "prototype" mattress and that CPSC staff compared this prototype to the sample mattress that staff had obtained from Amazon. Compl. ¶¶ 78c, 82. This factual dispute is irrelevant for purposes of Defendants' motion to dismiss.

*Serious Injury or Death from Entrapment or Suffocation; Violations of the Federal Regulations for Crib Mattresses* (Mar. 6, 2025) (the "Press Release").[8] The Press Release "warn[ed] consumers to immediately stop using Hiccapop PlayPad play yard mattresses model HP-TPM-2, which are sold separately from play yards." Press Release at 4. It further stated that "[t]he mattresses fail to meet federal thickness and dimension requirements for play yard mattresses sold separately from play yards, resulting in a dangerous gap between mattress and the play yard side." *Id.* And the Press Release explained the risk: "Babies have suffocated in gaps between an undersized mattress, or extra padding, and side walls of a product, especially when the infant's face becomes trapped against the play yard or the mattress, preventing the infant from breathing." *Id.*

### III.  This lawsuit

On May 1, 2025, Keezio filed a two-count Complaint, under the APA, challenging the Press Release as arbitrary and capricious, as well as contrary to the CPSA, the Fifth Amendment's Due Process Clause, and 42 U.S.C. § 1983. *See* Compl. ¶¶ 114–31. Keezio seeks an order requiring CPSC to retract the Press Release and a declaration that its constitutional due process rights were violated. *Id.*, Prayer for Relief ¶¶A–B.

CPSC now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for lack of subject-matter jurisdiction and failure to state a claim.

LEGAL STANDARD

On a motion under Federal Rule of Civil Procedure 12(b)(1), the Court "presume[s]" to "lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotation omitted).

---

[8] https://perma.cc/M2W9-MXHM. Keezio uses the same shorthand. *See* Compl. ¶ 1 (defining the "Press Release").

At the pleading stage, Keezio "must plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217 (2021). Any "conclusory statements" and "legal conclusions" in the complaint do not enjoy a presumption of truthfulness. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And there "must be enough" well-pleaded factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In this Circuit, "final agency action" under the APA is a prerequisite for subject-matter jurisdiction. *City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019). If Keezio cannot establish this jurisdictional requirement, then the case must be dismissed. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

In addition, under Rule 12(b)(6), "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Allegations "that are merely consistent with a defendant's liability" are insufficient to survive a motion to dismiss. *Id.* at 678 (quotation omitted). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a Rule 12(b)(6) motion, courts consider "the complaint itself," "documents that are explicitly incorporated into the complaint by reference," and "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

ARGUMENT

I.   **The Court lacks subject-matter matter jurisdiction because the Press Release is not "final agency action"**

The "APA does not provide judicial review for everything done by an administrative agency." *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (internal quotation omitted). Rather, the APA waives the federal government's sovereign immunity "to permit judicial review of only 'final agency

action[s].'" *Id.* (quoting 5 U.S.C. § 704). The term "final agency action" comprises "two components—agency action and finality of agency action," each of which "narrows the scope of judicial review." *Id.*

Here, Keezio avers that the Press Release is "final agency action." Compl. ¶¶ 116, 123. Keezio adds that, even if not final on its own, the Press Release becomes final agency action when "coupled with the CPSC's General Counsel's decision not to conduct an independent review and the CPSC's decision not to hold a hearing by the CPSC's Commissioners." *Id.* ¶ 13, *see id.* ¶ 12. Examination of CPSC's non-binding Press Release within the governing legal framework, however, reveals that it is not "agency action," must less the requisite "final agency action." Adding in the General Counsel's and the Commissioners' purported "decisions" does not change the analysis.

## A.    The Press Release is not "agency action"

The Court must "determine first whether" Keezio has challenged "'agency action,' as defined in 5 U.S.C. § 551(13)." *Golden & Zimmerman, L.L.C. v. Domenech*, 599 F.3d 426, 431 (4th Cir. 2010). Agency action "is a term of art that does not include all conduct on the part of the government." *City of N.Y.*, 913 F.3d at 430 (internal quotation omitted). Rather, section 551(13) "refers only to conduct that is 'circumscribed' and 'discrete.'" *Nat'l Veterans Legal Servs. Program*, 990 F.3d at 839 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)).

Numerous courts have recognized that "[t]he APA clearly defines when agency action occurs, [and] the issuing of a notice or press release is not included in that definition." *Arrow Reliance, Inc. v. Califf*, No. 2:22-cv-1057, 2022 WL 3104102, at *4 (W.D. Wash. Aug. 4, 2022); *see, e.g.*, *Hearst Radio v. FCC*, 167 F.2d 225, 226–27 (D.C. Cir. 1948) (FCC publication, containing allegedly defamatory information about station owner, did not satisfy "the statutory definition of 'agency action'"); *Barry v. U.S. SEC*, No. 10-cv-4071-CBA, 2012 WL 760456, at *5–6 (E.D.N.Y. Mar. 7, 2012) (SEC press release did

9

not fit any "[o]f the categories enumerated in the definition of 'agency action'"); *Pharm. Mfrs. Ass'n v. Kennedy*, 471 F. Supp. 1224, 1227–31 (D. Md. 1979) (FDA release of drug price information was not "agency action"); *Hoxsey v. Folsom*, 155 F. Supp. 376, 378 (D.D.C. 1957) (FDA circular "warning the public against the use of certain medicines and of a certain treatment for internal cancer" was not an "order"). Likewise, CPSC's public statement does not qualify as "agency action" under 5 U.S.C. § 551(13).

The Complaint does not allege the Press Release is a particular type of "agency action," and none of the few possibilities fits. Unlike an "order," 5 U.S.C. § 551(6), the Press Release is not a "'a final disposition,'" formulated through an "adjudication" with "determinate consequences" for Keezio.[9] *Int'l Tel. & Tel. Corp. v. Loc. 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 444 (1975) (quoting 5 U.S.C. § 551(6)). The Press Release does "not order anybody to do anything," and "standing alone," it "binds no one." *Id.* (quotation omitted). The same absence of any "legal effect" precludes treatment of the Press Release as a "rule." 5 U.S.C. § 551(4); *see Amoco Prod. Co. v. Watson*, 410 F.3d 722, 732 (D.C. Cir. 2005) (Roberts, J.), *aff'd sub nom. BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006). Similarly, the Press Release cannot be a "sanction" because it does not plausibly limit Keezio's "freedom" or withhold relief, impose a fine, take or withhold property, assess damages, revoke any license, or take any "other compulsory or restrictive action." 5 U.S.C. § 551(10). *See also Indus. Safety Equip. Ass'n v. EPA*, 837 F.2d 1115, 1118–19 (D.C. Cir. 1988); *El-Shifa Pharm. Indus. Co. v. United States*, No. 01-cv-731-RWR, 2007 WL 950082, at *1 (D.D.C. Mar. 28, 2007) ("[N]umerous courts have rejected classifying" non-binding statements "as sanctions based on the APA's definition."). The Press Release thus is not "agency action."

---

[9] Keezio elected not to submit to the CPSC Secretary a written "request [for] retraction" of the Press Release, *see* 16 C.F.R. § 1101.52(b), which would have culminated in a Commission "decision" on the request, *id.* § 1101.52(d)–(e); *see* 15 U.S.C. § 2055(b)(7).

10

**B.    The Press Release is not "final agency action"**

Even if the Press Release were "agency action" under 5 U.S.C. § 551(13), Keezio also must show it is "final agency action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). An "agency action" is "final" when it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). An action must satisfy both prongs of the *Bennett* test to be final. *See Golden & Zimmerman*, 599 F.3d at 432.

Courts routinely hold that press releases and other non-binding agency statements are not final agency action under the APA. *See, e.g., Invention Submission Corp. v. Rogan*, 357 F.3d 452 (4th Cir. 2004) (Patent and Trademark Office advertising campaign alerting consumers to invention promotion scams was not final agency action); *Flue-Cured Tobacco Coop. v. EPA*, 313 F.3d 852, 854 (4th Cir. 2002) (EPA report classifying environmental tobacco smoke as a carcinogen was not final agency action); *Trudeau v. FTC*, 384 F. Supp. 2d 281, 289 (D.D.C. 2005) (FTC press release was not final agency action and stating that "[n]o court has ever found a press release to be a final agency action under the APA"), *aff'd on other grounds*, 456 F.3d 178 (D.C. Cir. 2006); *Arrow Reliance, Inc. v. Califf*, No. 2:22-cv-1057, 2022 WL 18027595, at *4 (W.D. Wash. Dec. 30, 2022) ("*Arrow Reliance II*") (FDA press release recommending that consumers not use plaintiff's pet food was not final agency action).[10]

---

[10] *See also Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 945 & n.6 (D.C. Cir. 2012) (collecting cases and holding that FDA warning letter was not final agency action); *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015) (investigative report identifying pilot as the likely cause of accident was not final agency action); *Chemours Co. FC, LLC v. EPA*, 109 F.4th 179, 184–85 (3d Cir. 2024) (EPA health advisory regarding safe levels of chemical in drinking water was not final agency action); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 581 (3d Cir. 1998) (FAA reports warning aviation

The Fourth Circuit has explained that, although agencies' public statements have "persuasive value" that may influence the public's decisions, those "decisions are attributable to independent responses and choices of third parties," and are not the type of "potential civil or criminal penalties" that would satisfy the *Bennett* test. *Flue-Cured Tobacco*, 313 F.3d at 861. If agency statements could be challenged whenever they produced "pressures on third parties," the court cautioned, then "almost any agency policy or publication issued by the government would be subject to judicial review." *Id.* Congress did not intend "to create private rights of action[] to challenge the inevitable objectionable impressions created whenever controversial research by a federal agency is published." *Invention Submission*, 357 F.3d at, 459 (quoting *Flue-Cured Tobacco*, 313 F.3d at 861).

Here, faithful application of the Fourth Circuit precedent shows that CPSC's Press Release does not satisfy either *Bennett* prong, and therefore it is not final agency action.

### 1.    CPSC's decisionmaking process has not concluded

The first *Bennett* prong "directs courts to look at finality from the agency's perspective." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1271 (D.C. Cir. 2018). Courts "first look" to the "the decisionmaking processes set out in agency's governing statutes and regulations" to determine "whether an action is properly attributable to the agency itself and represents the culmination of that agency's consideration of an issue." *Jake's Fireworks*, 105 F.4th at 631 (first quoting *Flue-Cured Tobacco*, 313 F.3d at 858, then *Soundboard Ass'n*, 888 F.3d at 1267). An "informal" or "tentative" action "ordinarily does

---

community that the plaintiff may have improperly maintained aircraft parts were not final agency action); *Guerrero v. Clinton*, 157 F.3d 1190, 1194–95 (9th Cir. 1998) (agency's report to Congress was not final agency action); *Stenson Tamaddon, LLC v. U.S. Internal Revenue Serv.*, 742 F. Supp. 3d 966, 987 (D. Ariz. 2024) ("IRS's public statements regarding the ERC program are not final agency action."); *Barry*, 2012 WL 760456, at *6 ("The press release is therefore not 'final' action subject to review under the APA.").

not conclude an agency's decisionmaking process." *Id.* (quoting in part *Soundboard Ass'n*, 888 F.3d at 1267).

In *Jake's Fireworks*, the Fourth Circuit held that CPSC notices of noncompliance did not satisfy the first *Bennett* prong because they were not "final orders . . . from the Commission itself" reflecting a "final determination as to whether a violation has occurred" and "d[id] not trigger any of the administrative, civil, or criminal proceedings that the Commission could pursue." 105 F.4th at 632–33. Similarly, in *Invention Submission*, the Fourth Circuit determined that an advertising campaign by the Patent and Trademark Office was not final agency action because, "[o]ther than the administrative decision to conduct an advertising campaign at all," the agency did not "consummat[e] any decisionmaking process that determined rights or obligations or from which legal consequences flowed." 357 F.3d at 459. So too here.

The Press Release does not represent a "final order[]" of "the Commission itself" concluding an adjudicatory proceeding or determining that Keezio violated any law. *Jake's Fireworks*, 105 F.4th at 632. Nor does it bear the hallmarks of a final agency order: "[W]hen the Commission itself does issue orders, it says so, stating that they are 'final decisions and orders' to perform clearly binding commands." *Id.* at 633 (citation omitted). Issuing the Press Release also was not a decision to "pursue enforcement action," *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 734 (D.C. Cir. 2003), and the fact "that [CPSC] could undertake an enforcement action underscores the lack of finality," *Arrow Reliance II*, 2022 WL 18027595, at *5. As such, the Press Release did not go through any of "the steps required" for it "to have any legal consequences," and therefore it does not represent the consummation of an agency decisionmaking process. *Reliable,* 324 F.3d at 732.

### 2.    The Press Release imposes no direct, legal consequences

Keezio also cannot satisfy the second *Bennett* prong, which requires that the Press Release constitute an agency action by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Golden & Zimmerman*, 599 F.3d at 432 (quoting *Bennett*, 520 U.S. at 178). "The actions and consequences complained of by plaintiffs" must "*legally* flow from the" challenged agency action, or they must result from "*legal* rights or consequences created by the" action. *Flue-Cured Tobacco*, 313 F.3d at 861 (emphases added). "Agency action which carries no 'direct and appreciable *legal* consequences' is not reviewable under the APA." *Id.* at 859 (quoting *Bennett*, 520 U.S. at 178) (emphasis added). Here, Keezio lacks "specific facts indicating that" the Press Release "gave rise to 'legal consequences, rights, or obligations.'" *NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019) (quoting *Invention Submission*, 357 F.3d at 358).

Generally, "Executive Branch actions" like "press releases . . . are merely precatory" and "lack the force of law." *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 329–30 (1994). The Press Release fits that mold. It does not "*determine* the law or the consequences of not following it," nor does it "alter the legal landscape." *Golden & Zimmerman*, 599 F.3d at 433. The Press Release simply articulates the CPSC's preliminary view that Keezio's mattresses do not comply with existing law. *See Jake's Fireworks*, 105 F.4th at 633–33 ("[A] final determination as to whether a violation has occurred" requires a "final order[] . . . issue[d] only after the Commissioners have voted to authorize an administrative complaint and an administrative law judge has held a hearing."). But critically, the Press Release "d[oes] not command any action," *id.* at 633, nor does it prohibit Keezio from doing anything, *see Holistic Candlers*, 664 F.3d at 944. Keezio is "free to embrace or disregard" the position articulated in the Press Release, without "trigger[ing] the mandatory creation of legal rules, rights, or responsibilities." *Flue-Cured Tobacco*, 313 F.3d at 860. Any legal consequences would derive only from a

separate enforcement proceeding and would be "the product of independent agency decisionmaking." *Id.* at 860; *see Golden & Zimmerman*, 599 F.3d at 433.

Unable to show *legal* consequences, Keezio emphasizes the Press Release's supposed downstream effects, claiming that it prompted Amazon to "remove[] Keezio's [product] listing" and "offer[] consumers a refund." Compl. ¶¶ 104, 127; *see id.* ¶¶ 105–10, 112, 124–26. But Keezio concedes that CPSC did not ask—much less did the Press Release compel—Amazon to take these steps. *See id.* ¶¶ 2 (alleging that CPSC merely "request[ed] that Amazon send the Press Release to all known customers who purchased" Keezio's mattress), 104 ("[T]he Press Release was . . . silent as to any available customer remedies."). Amazon's actions are thus "not a regulatory effect reviewable in court, but at most an indirect effect from third parties and market forces." *Invention Submission*, 357 F.3d at 469. Whatever the "coercive pressures" or "persuasive value" of the Press Release "on third parties," such as Amazon or individual consumers, those sorts of practical effects are not the "direct and appreciable *legal* consequences" necessary to satisfy *Bennett*'s second prong. *Flue-Cured Tobacco*, 313 F.3d at 859, 861 (quoting in part *Bennett*, 520 U.S. at 178) (emphasis added); *accord City of N.Y.*, 913 F.3d at 431; *Invention Submission*, 357 F.3d at 469; *Reliable*, 324 F.3d at 731.

### 3.    Keezio cannot manufacture a final agency action

Tacitly acknowledging that the Press Release is not itself final agency action, Keezio tries to "couple[]" it "with the CPSC's General Counsel's decision not to conduct an independent review and the CPSC's decision not to hold a hearing by the CPSC's Commissioners." Compl. ¶ 13, *see id.* ¶ 12. This attempt to manufacture a final agency action fails.

For starters, Keezio does not allege the General Counsel or Commissioners actually made such a decision, only that "CPSC did not respond to" its counsel's email. *Id.* ¶ 95. Indeed, Keezio alleges that "CPSC did not consider Keezio's counsel's" email before

"publish[ing] the Press Release." *Id.* ¶ 101. So as Keezio pleads the case, the only decision made by CPSC was to issue the Press Release, which is not a final agency action for all the reasons described above.

Furthermore, CPSC's reasonable-cause determination that Keezio was not entitled to advance notice of the Press Release under 15 U.S.C. § 2055(b)(4) is not itself a challengeable final agency action. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980). In *Standard Oil*, the Supreme Court concluded that FTC's similar assertion, in an administrative complaint, of "reason to believe" that an oil company violated the FTC Act was merely "a threshold determination" necessary to commence "adjudicatory proceedings," and thus did not constitute final agency action. *Id.* So too here. Any "definitive [CPSC] position on the question whether [Keezio] violated the Act," or the assessment of any "civil penalties for noncompliance," must await notice and an opportunity for a hearing, during which Keezio could "present evidence and testimony . . . to refute the Commission's charges." *Id.* 241–42 (quotation omitted); *see Jake's Fireworks*, 105 F.4th at 632–33. Because CPSC's "determination of reasonable cause . . . can fix no obligation nor impose any liability," it is not "final agency action." *Georator Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979); *see also Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 835–36 (D.C. Cir. 2001) (similar).

At bottom, Keezio fails to establish the jurisdictional prerequisites of "agency action" and "final agency action." Because that is fatal to Counts I and II, the Court should dismiss this case for lack of subject-matter jurisdiction. *See Lovern*, 190 F.3d at 654.

## II.  Count II also does not plausibly allege a due process violation

In Count II, Keezio asserts that issuance of the Press Release "denied Keezio its due process rights, has unlawfully stopped the sale of all Keezio OEM Replacement Mattresses regardless of production date, and has caused Keezio to refund to customers

the purchase price of the OEM Replacement Mattresses regardless of production date." Compl. ¶ 129. A procedural due process claim requires that Keezio show "(1) [it] had property or a property interest (2) of which [CPSC] deprived [it] (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). Putting aside the finality of the Press Release, Count II still fails because Keezio's claimed injuries flowing from reputational harm do not constitute a deprivation of a property interest.

Although Keezio calls the Press Release "false, misleading and inaccurate," Compl. ¶ 2, there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause," *Paul v. Davis*, 424 U.S. 693, 702 (1976). "[R]eputation alone, apart from some more tangible interests such as employment," is not "'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id*. at 701. Thus, Keezio must show both "a stigmatic statement" *and* a government action that "'distinctly altered or extinguished [its] legal status.'" *Evans v. Chalmers*, 703 F.3d 636, 654–55 (4th Cir. 2012) (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012)).

Keezio does not identify any specific "property interest" of which it has been deprived, and the only injury alleged in the Complaint is harm to the company's business. *See* Compl. ¶¶ 124, 127, 129 (alleging that the Press Release "caused Amazon to offer refunds to customers" and was "immediately follow[ed]" by "Amazon remov[ing] Keezio's listing"). But that alleged harm is not the result of any "distinct[]" change in "*legal* status," *Evans*, 703 F.3d at 654 (emphasis added); rather, it "flows from injury caused by the defendant to a plaintiff's *reputation*," *Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (emphasis added). "Evidence of the impact on [a plaintiff's] market share and sales . . . does not show that its property right—*the ability to sell its product lawfully*—has been deprived by [the government] and instead, shows third party and market

17

reactions to [the government's action]." *Mallinckrodt Inc. v. FDA*, No. 8:14-cv-03607-DKC, 2015 WL 13091366, at *17 (D. Md. July 29, 2015) (emphasis added).

Many courts have reached the same conclusion. In *General Electric Co. v. Jackson*, the D.C. Circuit considered the argument that, "by declaring that [GE] is responsible for cleaning up a hazardous waste site, [EPA's order] harms [GE]'s reputation, and the market, in turn, devalues its stock, brand, and credit rating." 610 F.3d 110, 121 (D.C. Cir. 2010). The D.C. Circuit explained that such an "indirect effect"—harm "resulting not from EPA's issuance of the [order], but from market reactions to it"—is "insufficient to merit Due Process Clause protection." *Id.* at 113–14, 122. And in *Industrial Safety Equipment*, the D.C. Circuit held that EPA's issuance of a report warning against—but not prohibiting—the use of certain asbestos-protection respirators did not deprive manufacturers of their property interest" because EPA "only introduced new information into the market with a possible effect on competition." 837 F.2d at 1121–22.

The Second Circuit, too, holds that allegations of "damage not only to [plaintiffs'] business reputation, but [also the deprivation] of the good will in their business" and "discourage[ment] [to] customers," are insufficient to state a due process claim. *Sadallah v. City of Utica*, 383 F.3d 34, 38–39 (2d Cir. 2004); *see Asbestec Constr. Servs., Inc. v. EPA*, 849 F.2d 765, 769 (2d Cir. 1988). The Ninth Circuit follows suit, holding that alleged damage to a business's goodwill does not implicate due process because the asserted injury affects only reputation. *See WMX Techs., Inc. v. Miller*, 197 F.3d 367, 373–76 (9th Cir. 1999) (en banc).

As in the foregoing cases, Keezio does not (and could not plausibly) allege that the Press Release has any "binding effect," *O'Donnell v. Barry*, 148 F.3d 1126, 1139–42 (D.C. Cir. 1998), or that it "prohibit[s]" anyone from selling or purchasing Keezio's play yard mattress, *Gen. Elec. Co.*, 610 F.3d at 122. Keezio's alleged "financial losses that resulted from" CPSC's Press Release therefore are "not a sufficiently direct deprivation of property to state a due process violation." *Mallinckrodt*, 2015 WL 13091366, at *9–10; *see*

18

*Orton Motor, Inc. v. HHS*, 884 F.3d 1205, 1215 (D.C. Cir. 2018) (dismissing due process claim where plaintiff "failed to show that the mere issuance of a warning letter, absent further enforcement action, effects any such deprivation"). Accordingly, the Court should dismiss Count II for failure to state a claim.

CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for lack of subject-matter jurisdiction because Keezio has failed to meet its burden of establishing final agency action. Apart from a lack of final agency action, the Court should dismiss Count II for failure to state a claim upon which relief can be granted.

Dated: August 7, 2025                                 Respectfully submitted,

OF COUNSEL                                          BRETT A. SHUMATE
                                                    Assistant Attorney General
MATTHEW A. CAMPBELL
General Counsel                                     YAAKOV M. ROTH
                                                    Principal Deputy Assistant Attorney
MELISSA V. HAMPSHIRE                                   General
Assistant General Counsel                           Civil Division

AMY S. COLVIN                                       LISA K. HSIAO
HILDA GARCIA CONCEPCION                             Acting Director
Attorneys
U.S. Consumer Product Safety                        JAMES W. HARLOW
  Commission                                        Acting Assistant Director
Bethesda, Maryland 20814
                                                    */s/ David H. Hixson*
                                                    DAVID H. HIXSON (Ill. Bar No. 6289751)
                                                    Trial Attorney
                                                    Consumer Protection Branch
                                                    Civil Division
                                                    U.S. Department of Justice
                                                    P.O. Box 386
                                                    Washington, DC  20044-0386
                                                    (202) 449-8070
                                                    (202) 514-8742 (fax)
                                                    David.H.Hixson@usdoj.gov

19